

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MICHAEL W. SANDERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CV 03-B-0263-S** |
| | ) | |
| **ANTHONY J. PRINCIPI, Secretary of** | ) | |
| **the U.S. Department of Veterans Affairs,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

This case is presently pending before the court on defendant's Motion to Dismiss, or, in the alternative, Motion for Summary Judgment.  (Doc. 11.)[1]  Plaintiff Michael W. Sanderson has sued his former employer, the United States Department of Veterans Affairs, through Secretary Anthony J. Principi, alleging that defendant failed to select him for the position of Labor Relations Specialist in retaliation for his prior complaints of discrimination. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 11), is due to be granted; defendant's Motion to Dismiss, (doc. 11), will be denied as moot.

---

[1]Reference to document number, ["Doc."], refers to the number assigned to each document filed in the court's record.

## I. <u>SUMMARY JUDGMENT STANDARD</u>

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the non-moving party need not be given the benefit of every inference but only of every ***reasonable*** inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

2

## II. **STATEMENT OF FACTS**

Plaintiff claims that defendant "discriminated against [him] based on reprisal for prior EEO activity when it did not select him for the position of Labor Relations Specialist, GS-233-12/T13 or GS-13, Announcement Number PVN 01-03." (Doc. 11, Ex. 1, ex. 1 at 4.)

Plaintiff is a former Staff Attorney, GS-13, for the Department of Veterans Affairs Regional Counsel Office in Jackson, Mississippi. *See Sanderson v. Principi*, CV 02-AR-0341-S, doc. 11, Ex. 9 at 1 (N.D. Ala. Jul. 21, 2003). He was assigned to the VA Medical Center in Birmingham, Alabama from August 1994 until he was terminated on December 29, 2000, for failing to accept a directed reassignment to Montgomery, Alabama. *Id.* at 1-2. On November 8, 2000; November 20, 2000; and January 8, 2001, plaintiff filed formal EEO complaints against his former supervisors at the Regional Counsel Office. *Id.* at 2.

Plaintiff contends that he discussed his EEO complaints with Y.C. Parris between October 2000 and January 26, 2001. (Doc. 13, Ex. A, ex. 1 at 11.) At all relevant times, Parris was the Chief Executive Officer/Medical Center Director for the Birmingham VA Medical Center. (*Id.*, ex. B at 1-2.)

In December 2000, the Birmingham VA Medical Center announced an available Labor Relations Specialist position, GS-233-12, under vacancy announcement 00-49. (Doc. 11, Ex. 1, ex. 1 at 5.) In response to the announcement, defendant received four applications, including one from plaintiff. (*Id.*; doc. 13, Ex. A, ex. 1 at 4.) Because there were so few applicants, the announcement was cancelled. (Doc. 11, Ex. 1, ex. 2, Tab B-5 at 4.)

Plaintiff testified that Parris told him the position was cancelled so that Parris could add a requirement of a law degree to the position; he testified:

> Mr. Parris indicated that he had changed the original position description to include a requirement for a Doctor of Jurisprudence degree, which is the standard advanced degree that lawyers get before they take the bar exam. I had one of those, so I felt fairly comfortable. Originally, when I heard about the cancellation of the job, my suspicion was kind of heightened, and he was able to console me and allay my fears during the conversation, because he said he was dissatisfied with the service he had been getting from Regional Counsel, and the fact that I had been yanked out of the medical center left him without a lawyer. He wanted to add a requirement to the Labor Management Relations Specialist job so that he could hire a lawyer, so that the lawyer could represent him and the Birmingham VA Medical Center in any one of the many forums that were required in the day to day course of operation of the medical center. So, the story I got was, not to worry, Mike. The reason we canceled the original one was to add this lawyer requirement, and then we're going to re-solicit and you can apply again. And if you apply, we think we'll pick you.

(Doc. 13, Ex. A, ex. 1 at 5-6.)[2]

The position was re-announced, Announcement Number PVN #01-03, on January 24, 2001, as a GS-233-12 Target 13 or GS-13, with the addition of payment of recruitment and relocation bonuses and expenses. (Doc. 11, Ex. 1, ex. 2, Tab C-1 at 3.) It did not include a requirement for a law degree.

As re-announced, the Labor Relations Specialist position contained the following requirements:

> (1)  Knowledge of applicable case law, including decisions of the FLRA, FSIP, Comptroller General, MSPB, and arbitration cases, and skill in applying these decisions and principles to highly complex situations.

---

[2]Parris denies that the position was re-announced in order to add the requirement of a law degree. (Doc. 11, Ex. 1, ex. 2, Tab B-4 at 8.)

(2)  Knowledge of VA and federal personnel regulations, policies, principles and practices to advise managers and supervisors on a wide variety of complex labor management issues.

(3)  Ability to communicate orally and in writing with individuals of varying backgrounds to provide expert advice and assistance on labor relations matters.

(4)  Skill in investigative fact-finding in order to resolve, complaints and issues.

(5)  Ability to establish priorities, meet deadlines, work independently and function in stressful situations.

(*Id.* at 4.)  The re-announcement noted that the position closed on February 6, 2001.  (*Id.* at 3.)

After the position was re-announced, plaintiff spoke with Parris; he testified regarding this conversation as follows:

On January 26, I had an appointment with Y.C. Parris.  This was after the position closed, but just before the selection was made.  The conversation happened in Y.C. Parris' office, just Mr. Parris and me.  . . .  Mr. Parris indicated that he was going to make a selection, and that I would be the one selected.  He also indicated, incident to my discussion, I told him, "Look I've been fired, and my children are starving, and I need to find work.  If you're not going to pick me, I need to do something else."  And I told him that the labor union, and the president at that time was Doris Blue . . . , [a] person that I had met in adversarial circumstances numerous times, so we had a substantial data base and working relationship with each other.  Ms. Blue had discovered that I had been fired, and she came to me and said that the union had need for a fellow like me, and if I would join forces with her, we could wreck havoc with the Medical Center.  Well, I communicated that information to Parris, trying to get him to understand that I was unemployed, needed a job, and if he wasn't going to hire me, I was going to go to the union, or go to other places and find some gainful employment.  Parris said, during the January 26 meeting, indicated to me that he didn't think that would be the wisest approach, given that he was about to hire me for the Labor Management Relations job, and I was going to go work for the union in the interim period, it made it kind of

inconsistent and awkward for him to hire me away.  So, although he didn't
mouth the exact words, the clear indication was, "Mr. Sanderson, don't go
working for the union because I'm getting ready to hire you."[3]

(Doc. 13, Ex. A, ex. 1 at 7-8 (footnote added).)

Plaintiff filed his application for the re-announced position on February 6, 2001.

(Doc. 11, Ex. 1, ex. 2, Tab C-1 at 3; *id.*, Tab C-3 at 2.)  On his application, he stated that he

had worked as a Staff Attorney for the VA Office of Regional Counsel from August 1994

until December 2000.  (*Id.*, Tab C-3 at 3.)

On February 6, 2001, defendant received an application from Edward Culbreath.  (*Id.*,

Tab C-4 at 2.)  Culbreath's application indicated that, as of February 2001, he had twenty

years of relevant experience – including working as a Supervisory Employee Relations

Specialist, a Supervisory Labor Relations Specialist, and a Lead Labor Relations Specialist.

(*Id.* at 3-5.)

---

[3]Parris disputes plaintiff's version of their conversation.  (Doc. 11, Ex. 1, ex. 2, Tab
B-4 at 7.)  He testified:

Mr. Sanderson brought to me the information that Doris Blue had approached
him about, if you resign from the VA, then we as a union would like to hire
you.  And Mike asked what I felt about that, since he was going to be out of
work because he wasn't moving to Montgomery and he needed to work for
somebody.  And I told him up front that, "Mike," I said, "you have to make
your own decisions, but you have been, if you will, fighting on the other side
of the union all this time, and you know some of the tactics and things that
they do, and I don't think you would be happy working for them knowing the
ethical stand you've taken on the other side.

(*Id.*)  Parris denies that, during this conversation, he lead plaintiff to believe he would be
hired for the Labor Relations Specialist position.  (*Id.*)

6

Defendant's Chief of Resource Management, Mary Mitchell, Labor Relations Specialist, Candy Porter, and Chief Operating Officer, Karen Shamlin, comprised the selection review panel. (Doc. 11, Ex. 6 ¶ 3.) Each member of the panel independently reviewed each application. (Doc. 11, Ex. 1, ex. 2, Tab B-5 at 3; *id*, Tab b-7 at 3-4.) The panel members chose Culbreath as the top applicant to forward to Parris, the selecting official. (*Id.*, Tab B-5 at 3.) Mitchell testified, Culbreath "was the one that stood out. He had twenty years of Labor experience (pure Labor experience.) And he stood out as the highest quality candidate." (*Id.* at 3-4.) Shamlin testified the panel recommended Culbreath because they "felt [he] was somebody who could step into the program immediately and not only help keep it going, but improve it." (*Id.*, Tab B-8 at 5.) Nothing in the record indicates that Parris was involved with the selection panel's review of the applications or decision to recommend Culbreath.

On or about March 2, 2001, Parris selected Culbreath for the position of Labor Relations Specialist. (*Id.*, Tab C-4 at 18.) In comparing plaintiff to Culbreath, Parris testified that plaintiff "had a very limited amount of work experience in Labor Management Relations when compared to the knowledge, skills, abilities and other characteristics of the selectee, Edward Culbreath, who was Lead Labor Relations Specialist GS-13 with the United States Navy Human Resources Center at the time he applied for the position." (Doc. 11, Ex. 6 ¶ 5.) He testified that plaintiff "had a very good track record dealing with the labor cases." (Doc. 13, Ex. B at 8.) However, Parris also testified that, during plaintiff's tenure as a Staff

Attorney, "there was an extended period of time over about three years that he was not here."

(*Id.* at 10-11.)

Despite Parris's testimony regarding plaintiff's qualifications, plaintiff contends "somebody yanked Mr. Parris' chain" before the selection decision was made and that this is the reason why he was not selected for the position. (Doc. 13, Ex. A, ex.1 at 9.) Specifically, he testified:

> [I]incident to trial preparation on a complaint I had made against the Regional Counsel's Office involving allegations of violations of the statute that protects military members, . . . the lawyer from Washington who was representing the agency, had come to Birmingham to discuss trial preparation with a number of witnesses, not the least of whom was Y.C. Parris.
>
> . . . [After] the agency counsel arrived from Washington, from the General Counsel's Office there, to do witness preparation, about a week later, I was non-selected for the job.
>
> . . .
>
> . . . Not only was Mr. Parris well aware of my EEO involvement up to that time, but . . . it's pretty clear to me that during the meeting that Mr. Parris had with this agency counsel and Betty Barrett during the preparation phase for that military discrimination complaint, somebody yanked Mr. Parris's chain. Now, I don't know if they went to Larry Diehl, who is Y.C. Parris' direct superior and VISN Director in Atlanta, or if it came from anywhere higher up, but it is strikingly inconsistent that Parris would say to me, up until that meeting, not to worry, you're essentially hired on, and then do an abrupt about face, immediately after having a conversation with agency counsel on another discrimination complaint.

(Doc. 13, Attachment A at 8-9.)

Mitchell notified plaintiff on March 6, 2001 that he had not been selected. (Doc. 11, Ex.1, ex. 2, Tab C-3 at 1.) Mitchell sent plaintiff a letter, which stated, "Your application

was carefully reviewed along with other interested candidates for the position [of Labor Relations Specialist].  However, another candidate was selected."  (*Id.*)  The letter did not provide any details regarding the selection decision.  (*Id.*)  Plaintiff testified that after he received the letter, he called and left messages for Parris seeking the reason for his non-selection.  (Doc. 13, Ex. A, ex. 1 at 10.)  He testified "to [his] knowledge [he] never got a return phone call."  (*Id.*)

Plaintiff contacted an EEO counselor on April 20, 2001, and he filed a formal complaint on June 1, 2001.  (Doc. 11, Ex. 1, ex. 2, Tab A-7 at 2.)  The sole issue of his EEO formal complaint was:

> Whether on the basis of Reprisal for prior EEO activity, the complainant was notified on March 9, 2001 that he had been considered for employment with the VA Medical Center in Birmingham, but had not been selected for the position of Labor Relations Specialist.

(*Id.*)

The agency issued its Final Decision on November 27, 2001, the decision stated:

> We find that the [plaintiff] has adduced no evidence sufficient to establish that management's articulated reasons are not the true reasons for continuing its recruitment for a highly experienced Labor Relations Specialist despite the [selecting official's] knowledge of [plaintiff's] interest in the position and his agreement to consider him for the job.  Additionally, we find not [sic] guidance by the Commission that the [selecting official's] agreement to consider [plaintiff] for any position he qualified for amounted to a binding agreement to hire him for the position in question over more qualified candidates.  Indeed, that type of selection decision would amount to preselection, which is a prohibited personnel practice.  We find also that the [plaintiff] has not adduced evidence to establish that his qualifications were so superior to the qualifications of the individual selected as to warrant a finding of pretext. *Bauer v. Bailar*, 647 F.2d 1037, 1048, 25 FEP Cases 963 (10th Cir. 1981).

(Doc. 11, Ex. 1, ex. 1 at 14.)

A copy of the final decision was sent to plaintiff and his counsel.  (Doc. 11, Ex. 1 ¶ 7.)  According to the United Postal Service records, plaintiff received the final decision on December 18, 2001, (doc. 11, Ex. 1, ex. 1 at 22), and his counsel received the final decision on December 1, 2001, (*id.* at 23).

Plaintiff testified that he was on "continuous active duty in the United States Air Force from September 20, 2001 until [his] discharge and release from active duty Federal military service on November 7, 2002," and, thereafter, he was "activated for one to two week time frames from November 16, 2002 until March 17, 2003."  (Doc. 13 ¶ 4.)  Plaintiff filed the instant action on February 5, 2003.  (Doc. 1.)

## III. <u>DISCUSSION</u>

Defendant has moved to dismiss plaintiff's retaliation claim on the grounds (1) that plaintiff's claim is time-barred because he did not file this lawsuit until more than 90 days after he received the final decision, and (2) that plaintiff cannot establish that the reason for his non-selection was a pretext and that the real reason was retaliation.

## A. SERVICEMEMBERS' CIVIL RELIEF ACT[4]

---

[4]Both parties refer to the Sailor's and Soldier's Civil Relief Act, which was amended, effective December 19, 2003 and the name was changed to the Servicemembers' Civil Relief Act.  As amended, the Servicemembers' Relief Act applies "to any case that is not final before the date of the enactment of this Act", which was December 13, 2003.  50 U.S.C. App. § 501, Historical and Statutory Notes.  Therefore, the Servicemembers' Relief Act, and not its predecessor, the Sailor's and Soldier's Civil Relief Act, applies to this case.

Defendant contends that plaintiff's claim is time-barred because he failed to file the instant action "within 90 days of receipt of notice of final action."  *See* 42 U.S.C. 2000e-16(c).  Defendant has submitted evidence that shows that plaintiff and his counsel received notice of the final decision in December 2001; however, the instant action was not filed until over a year later on February 2003.

Plaintiff contends that his Complaint was timely filed because the statute of limitations was tolled during his active military service pursuant to the Servicemembers' Civil Relief Act ["SCPA"], 50 U.S.C. App. § 526.  Defendant contends that plaintiff cannot rely on the SCPA because he "has not proffered any evidence to show that he was detrimentally affected by military service in his ability to prosecute this civil claim."  (Def. Reply Br. at 5 (citing *Crouch v. United Technologies Corporation*, 533 So. 2d 220, 222 (Ala. 1988).)

> Section 526 of the SCPA provides:
>
> The period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court, or in any board, bureau, commission, department, or other agency of a State (or political subdivision of a State) or the United States by or against the servicemember or the servicemember's heirs, executors, administrators, or assigns.

50 U.S.C. App. § 256.[5]

---

[5]This provision is virtually identical to its predecessor, 50 U.S.C. App. § 525, which provided:

> The period of a military service shall not be included in computing any period now or hereafter to be limited by law, regulation, or order for the bringing of

The language of § 526 is "unambiguous, unequivocal, and unlimited." *See Conroy v. Aniskoff*, 507 U.S. 511, 514 (1993)(discussing § 526's predecessor § 525); *see also In re A.H. Robbins Co.*, 996 F.2d 716, 718 (4th Cir. 1993)("The broad, unqualified, and mandatory language of section 525 leaves little room for judicial interpretation or oversight in its application; indeed, we have held quite plainly that the tolling statute [section 525] is unconditional.")(internal quotations omitted).   Nothing in the plain language of § 526 imposes a burden on the servicemember to "demonstr[ate] . . . hardship or prejudice resulting from military service." *See Conroy*, 507 U.S. at 514.

Defendant argues that plaintiff must demonstrate that "his military service prevented him from timely filing the Complaint in this action." (Def. Reply Br. at 4.)  In support of its argument, defendant cites the court to *Crouch v. United Technologies Corporation*, 533 So. 2d 220 (Ala. 1988), which held, in pertinent part, that a servicemember is required to demonstrate that his service "materially affected" his ability to pursue his legal rights. *See id*. at 222.   However, this holding was rejected by the Supreme Court in *Conroy*. *See Conroy*, 507 U.S. at 514; *see also A.H. Robins Com.*, 996 F.2d at 718.[6]

---

any action or proceeding in a court, board, bureau, commission, department, or other agency of government by or against any person in military service or by or against his heirs, executors, administrators, or assigns, whether such cause of action or the right or privilege to institute such action or proceeding shall have accrued prior to or during the period of service . . . .

*Id.*, quoted in *Conroy v. Aniskoff*, 507 U.S. 511, 512 n. 1 (1993).

[6]The *A.H. Robins Co.* court noted that some courts, including the Alabama Supreme Court in *Crouch*, had "found in section 525 a requirement that the service man seeking

To establish his entitlement to the tolling provision of the SRCA, the only burden plaintiff bears is to prove he comes within the clear terms of the statute; that is, he must demonstrate the relevant period of his military service.  *See A.H. Robins Co.*, 996 F.2d at 718.

> Plaintiff has established his military service during the relevant period; he testified:
>
> I was activated into Federal military service on September 20, 2001.  I remained on continuous active duty in the United States Air Force from September 20, 2001 until my discharge and release from active duty Federal military service on November 7, 2002.

(Doc. 13, Ex. A ¶ 4.)  The Final Decision was issued on November 27, 2001, after plaintiff was activated and during the time he was on active duty.  Plaintiff was released from active duty on November 7, 2002.  The court finds that plaintiff has established his military service during the relevant time period after the Final Decision was issued.

Therefore, the time for filing his Complaint after the Final Decision was tolled until November 7, 2002.  Ninety days thereafter, on February 5, 2003, plaintiff filed the instant action.  Thus, plaintiff's action was timely filed, and defendant's Motion for Summary Judgment on the ground that plaintiff's claim is time-barred is due to be denied.

---

protection of the tolling mechanism make a showing that the circumstances of his military service actually impaired his ability to pursue his legal rights in a timely fashion."  *A.H. Robins Co.*, 996 F.2d at 718.  The court then found that "the requirement of a showing that the period of military service actually affected the serviceman's exercise of his rights" had been rejected by the Supreme Court in *Conroy*.  *Id.* (citing *Conroy*, 507 U.S. at 514-518).

**B.  RETALIATION**

**1.  Direct Evidence**

Plaintiff contends that he can establish his claim by direct evidence.  Relying on

*Wright v. Southland*, 187 F.3d 1287 (11th Cir. 1999), plaintiff argues:

> What constitutes "direct evidence" in employment discrimination cases is not the dictionary definition of "direct evidence".  The term as used in employment discrimination cases means "evidence from which a trier of fact could conclude, based on a preponderance of the evidence, that an adverse employment action was taken against the plaintiff on the basis of a protected personal characteristic." *Wright* at 1287. . . .
>
> . . .
>
> Sanderson can . . . prove such retaliatory motives sufficient to send this case to a jury. . . . Sanderson gave sworn testimony to [the] EEO investigator . . . that Parris had lead him to believe he would be hired for the position of Labor Relations Specialist.  After Parris received a visit from an attorney prepping him for trial on Sanderson's first lawsuit, however, he was non-selected for the position [of Labor Relations Specialist].  [Parris] also did not return any of Sanderson's phone calls after [Parris did not select Sanderson for the Labor Relations Specialist position].  Up until that time, they had had an amicable relationship.  Sanderson can also show, as set forth previously, that Parris has made contradictory statements about Sanderson's qualifications and of his being aware of the EEO complaints.  These inconsistent statements are due to be presented to a jury.

(Pl. Br. in Opp. at 7, 9.)

"Direct evidence is evidence, which if believed, proves the existence of the fact in

issue **without inference or presumption**." *Maynard v. Board of Regents*, 342 F.3d 1281,

1289 (11th Cir. 2003)(internal quotations and citations omitted; emphasis added).  Judge

Tjoflat's definition of "direct evidence" in *Wright v. Southland* – that direct evidence is

"evidence from which a reasonable trier of fact could find, more probably than not, a causal

link between an adverse employment action and a protected personal characteristic"[7] – is "mere *obiter dictum*, as it was not necessary to the resolution of the case, and neither of the two other members of the panel joined that portion of the opinion." *Ferrell v. Masland Carpets, Inc.*, 97 F. Supp. 2d 1114, 1123 n. 11 (S.D. Ala. 2000)(quoting *Copley v. Bax Global, Inc.*, 80 F. Supp. 2d 1342, 1348 (S.D. Fla. 2000)). Indeed, the Eleventh Circuit has recently reasserted the well-established definition of direct evidence, *see Maynard*, 342 F.3d at 1289, which is set forth above, and which is the definition of "direct evidence" this court has applied to the facts of this case.

The court finds that plaintiff's alleged direct evidence is not "evidence, which if believed, proves the existence of the fact in issue without inference or presumption." *Maynard*, 342 F.3d at 1289. Nothing in plaintiff's evidence is sufficient to allow a reasonable jury to find ***without inference*** that Parris did not select plaintiff because of plaintiff's prior EEO complaints.

The court finds that plaintiff has not presented direct evidence of retaliation; however, the court will consider plaintiff's evidence to the extent it is relevant to proving his retaliation claim by circumstantial evidence.

## 2. Circumstantial Evidence

Because plaintiff has presented circumstantial evidence to prove his retaliation claim, the court's analysis of such claim is governed by the tripartite framework established by the

---

[7]*Wright*, 187 F.3d at 1298.

Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir.1993); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162-63 (11th Cir. 1993). Under this framework, plaintiff bears the initial burden of establishing a prima facie case of retaliation. *See Burdine*, 450 U.S. at 252-53. If plaintiff successfully establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for its employment decision. *McDonnell Douglas*, 411 U.S. at 802. If defendant succeeds in carrying this burden, then plaintiff must prove that defendant's articulated reason is a mere pretext for unlawful retaliation. *See Burdine*, 450 U.S. at 253. At all times, plaintiff bears the burden of persuasion on the ultimate question of whether defendant acted with an unlawful motive. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). If plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether defendant's articulated reason is pretextual, defendant is entitled to summary judgment on plaintiff's claim. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997), *cert. denied sub. nom Combs v. Meadowcraft Co.*, 522 U.S. 1045 (1998).

In order to establish a prima facie case of retaliation, plaintiff must show: (1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal link between the protected expression and the adverse action. *Hairston*, 9 F.3d at 919. "The causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated."

*Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)(quoting *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir.1998)(quoting *E.E.O.C. v. Reichhold Chem., Inc.*, 988 F.2d 1564, 1571-72 (11th Cir.1993)))(internal quotations omitted). "Once a plaintiff has established a prima facie case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action. The ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff." *Id.* (citations omitted).

The court assumes, without deciding, that plaintiff can establish a prima facie case of retaliation "because [the court] find[s] that [defendant's] legitimate reason[ ] for the decision [is] dispositive." *Pennington*, 261 F.3d at 1266.

Plaintiff may establish that an articulated reason is a pretext for retaliation "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989)(quoting *Goldstein v. Manhattan Industries*, 758 F.2d 1435, 1445 (11th Cir. 1985)(citing *Burdine*, 450 U.S. at 256), *cert. denied* 474 U.S. 1005 (1985)). If plaintiff chooses to establish pretext by showing that defendant's articulated reason is unworthy of credence, he must attack that reason "head on and rebut it." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000). That is, plaintiff must offer evidence that "casts sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's

17

proffered 'legitimate reasons were not what actually motivated its conduct.'" *Combs*, 106 F.3d at 1538 (quoting *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994)); *see also Clay v. Holy Cross Hospital*, 253 F.3d 1000, 1005-06 (7th Cir. 2001)("Pretext means a dishonest explanation, a lie rather than an oddity or an error.  A 'pretext for discrimination' means more than an unusual act; it means something worse than a business error; 'pretext' means deceit used to cover one's tracks.  On the issue of pretext, our only concern is the honesty of the employer's explanation.  Thus, even if [defendant's] reasons for [plaintiff's] termination were mistaken, ill considered or foolish, so long as [defendant] honestly believed those reasons, pretext has not been shown.")(internal citations and quotations omitted.)  The "pretext analysis focuses on a narrow question:  Would the proffered evidence allow a reasonable factfinder to conclude that the articulated reason for the decision was not the real reason?" *Walker v. Prudential Property and Cas. Ins. Co.*, 286 F.3d 1270, 1276 (11th Cir. 2002)(citations omitted).

Parris, the decisionmaker, stated that he selected Culbreath because he was the best qualified applicant based on his years of experience.  This reason is sufficiently specific to shift the burden to plaintiff to establish that the reason is unworthy of credence.

Plaintiff contends that Parris's reason for selecting Culbreath are unworthy of credence for the following reasons:

    1.  Plaintiff is better qualified for the position because he has a law degree;

    2.  Parris made inconsistent statements regarding plaintiff's qualifications; and

18

3.  Parris preselected plaintiff for the position and only changed his mind after discussion of plaintiff's prior complaint with an attorney from Washington, D.C.

(*See* Pl. Br. in Opp. at 6-7, 9.)  However, for the reasons set forth below, the court finds plaintiff has not produced substantial evidence upon which a reasonable jury could find that Parris's articulated reason for not selecting plaintiff  – the superior qualifications of Culbreath – is unworthy of credence.

### a.  Relative Qualifications

Plaintiff contends that he more qualified than Culbreath because he has a law degree and more courtroom experience.  (Pl. Br. in Opp. at 6-7.) Specifically, he argues, "Although Culbreath might have had more experience as a Labor Relations Specialist, both applicants were the same level, GS-13, and [plaintiff] had far more experience in the courtroom as an attorney and had a J.D. degree, which Culbreath does not."  (Pl. Br. in Opp. at 7.)

"[T]he Eleventh Circuit Court of Appeals has repeatedly held that, where a claim of discrimination is based on relative qualifications, disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face.'"  *Hall v. Alabama Ass'n of School Boards*, 326 F.3d 1157, 1167-68 (11th Cir. 2003)(internal citations and quotations omitted).  "The relevant inquiry for [the court], then, is not to judge which employee was more qualified, but to determine whether any disparity between [plaintiff's] and [Culbreath's] qualifications is so great that a reasonable fact-finder could infer that [Parris] did not believe [Culbreath] to be better qualified."  *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 (11th Cir.

2001); *see also Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1255 (11th Cir. 2000)("***None*** of Lee's proffered evidence established that she was more qualified than Hines, let alone so clearly more qualified for the position than Hines that a reasonable juror could infer discriminatory intent from the comparison.)(citations omitted; emphasis in original).

The record shows that, at the time he applied for the position of Labor Relations Specialist, plaintiff had a law degree and six and a half years of experience working as an attorney for defendant, his tenure as a Staff Attorney was not limited to working on labor issues, and he was absent for extended periods of time. Culbreath, who did not have a law degree, had over twenty years of experience working a labor or employment specialist.[8] Based on the evidence in record, the court finds that no reasonable fact-finder could infer that Parris did not believe Culbreath to be better qualified for the position of Labor Relations Specialist.

The court finds that any disparities between plaintiff's qualifications and Culbreath's qualifications are not sufficient to establish that Parris's articulated reason for selecting

---

[8]The court finds that a reasonable employer may prefer Culbreath's relevant experience gained from regular work in the position over plaintiff's relevant experience gained from occasional work in the area as an attorney. *See Twilley v. Burlington Northern & Santa Fe Ry. Co., Inc.*, 351 F. Supp. 2d 1299, 1307 (N.D. Ala. 2004)("The obvious fact is that Freshour considered experience at a regular job involving heavy equipment and daily safety concerns superior to plaintiff's experience occasionally helping out on a farm and driving a tractor. . . . Plaintiff has failed to meet her evidentiary burden in order to prove pretext, or even to create a genuine issue of material fact as to pretext, because she has not shown that she was substantially more qualified than others selected by Freshour with regard to the qualities BNSF considered most important.")

Culbreath – Culbreath's superior experience as a Labor Relations Specialist – is unworthy of credence.

### 2. Inconsistent Statements Regarding Plaintiff's Qualifications

As evidence of pretext, plaintiff argues:

> Parris . . . states . . . that the [Birmingham VA Medical Center] "had a very, very active labor group . . . ."  In comparing Sanderson to the selectee, Ed Culbreath, . . . Parris states that Sanderson "had a very limited amount of work experience in Labor Management Relations . . . ."  In his telephonic Affidavit given in the previous case, however, he stated that "Mr. Sanderson had a very good track record dealing with the labor cases.  And that we had some Service Chiefs here at the Medical Center who had confidence in him in the courtroom."  . . .  These two statements also seem to be in conflict.  If the [Birmingham VA Medical Center] had a "very, very active labor group" and Sanderson "had a very good track record dealing with the labor cases", how is it that he "had a very limited amount of work experience in Labor Management Relations."

(Pl. Br. in Opp. at 6-7.)

The court has reviewed Parris's testimony and finds that it is not inconsistent with regard to plaintiff's qualifications.  Regarding Parris's testimony about the Birmingham VA Medical Center's "very, very active labor group," Parris stated:

> The Birmingham VA Medical Center has a very, very active labor group and the position had been authorized because I was looking for a person for the position with senior labor relations experience.  I was fortunate that, in the selectee, the facility obtained a senior labor relations person who had over twenty years of experience in the field.

> . . . Based on his application, Human Resources Management Service determined Mr. Sanderson to be qualified for the position **but he had a very limited amount of work experience in Labor Management Relations when compared to the knowledge, skills, abilities, and other characteristics of the selectee**, Edward Culbreath, who was the Lead Labor Relations Specialist, GS-

21

13 with the United States Navy-Human Resources Center at the time he applied for the position.

(Doc. 11, Ex. 6 ¶¶ 4-5 (emphasis added).)

Also, in his previous testimony, Parris referred to plaintiff's "excellent track record" of "winning cases" for the Birmingham VA Medical Center, but he also noted that "there was an extended period of time over about three years that he was not here." (Doc. 13, Ex. B at 8.)

The record shows that plaintiff was employed by the VA from August 1994 until December 2000 – a period of less than six and a half years. During that time period, plaintiff handled labor relations issues, along with other legal issues, as part of his job assignments. Also, plaintiff's absence from work for a considerable period of during his tenure as a Staff Attorney also limits the about of relevant experience plaintiff can claim during his six and a half years as a Staff Attorney. Based on this evidence, the court finds that Parris's statement that plaintiff "had a very limited amount of work experience in Labor Management Relations" is neither inaccurate nor inconsistent with his previous testimony.

Therefore, the court finds no inconsistency in Parris's testimony regarding plaintiff's experience sufficient to allow a reasonable jury to find that Parris's articulated reason for selecting Culbreath is unworthy of credence.

### 3. Pre-Selection

Plaintiff contends "Parris led him to believe he would be hired for the position of Labor Relations Specialist," but "[a]fter Parris received a visit from an attorney prepping him

for trial on [plaintiff's] first lawsuit, [plaintiff] was non-selected for the position."  (Pl. Br. in Opp. at 9.)  The court notes that, at the time Parris allegedly told plaintiff he would be hired, Culbreath had not applied for the position and there is no indication that Parris was aware that he would have an applicant of Culbreath's qualifications.  Therefore, the issue is whether evidence that Parris selected Culbreath after he had told plaintiff he would select him for the position is sufficient evidence to "allow a reasonable factfinder to conclude that the articulated reason for the decision," that Culbreath was the most qualified, "was not the real reason" for the decision.  *Prudential*, 286 F.3d at 1276.

The court notes that preselection by the decision maker of any individual to a competitive merit system position in the federal job service is strictly prohibited by law.  *See* 5 U.S.C. § 2302(b)(6).[9]  Nothing in the record indicates that plaintiff, as a Staff Attorney,

---

[9]Section 2302(b)(6) states:

(b)   Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority –

. . .

        (6)  grant any preference or advantage not authorized by law, rule, or regulation to any employee or applicant for employment (including defining the scope or manner of competition or the requirements for any position) for the purpose of improving or injuring the prospects of any particular person for employment . . . .

5 U.S.C. § 2302(b)(6).

was unaware that Parris could not preselect him for Labor Relations Specialist position, which was a competitive position.

Also, the evidence is quite clear that Parris was well aware of plaintiff's EEO activity at the time he allegedly preselected plaintiff and before the alleged arrival of counsel from Washington D.C.  There is no evidence, other than plaintiff's supposition, that Parris was told or otherwise influenced not to select plaintiff for the position because of his EEO activity.  A reasonable jury could not find that Parris's reason for hiring Culbreath, i.e. his superior relevant experience in the position, is unworthy of credence simply because Parris told plaintiff that he would select him for the Labor Relations Specialist position.  This is especially so in light of the facts (1) that Parris was prohibited from preselecting any applicant for a competitive position; (2) that Parris allegedly told plaintiff he would be selected before he knew Culbreath applied; and (3) Culbreath was highly qualified with over 20 years of relevant experience.

Based on the foregoing, the court finds that plaintiff has failed to meet "head on and rebut" defendant's articulated reason for hiring Culbreath – his twenty years of relevant experience.  Therefore, the court finds that plaintiff has not shown that defendant's articulated reason for not selecting him is unworthy of credence.  Based on the foregoing, defendant's Motion for Summary Judgment as to plaintiff's retaliation claim is due to be granted.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law.  An order granting defendant's Motion for Summary Judgment, (doc. 11),  will be entered contemporaneously with this Memorandum Opinion.  Because of the court's granting of defendant's  Motion for Summary Judgment, defendant's alternative Motion to Dismiss will be denied as moot.

**DONE** this 29th day of March, 2005.

SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE